# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **TALMER BANK AND TRUST,** | : | Case No. |
| Plaintiff, | : | Judge: |
| vs. | : | |
| **GARY KAUSMEYER,** | : | |
| Defendant. | : | |

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Talmer Bank and Trust ("Talmer"), by its attorneys, for its Complaint against Defendant Gary Kausmeyer ("Kausmeyer") states as follows:

## JURISDICTION AND PARTIES

1.      Plaintiff Talmer is a Michigan state-chartered bank with its principal place of business in Troy, Michigan.  Talmer is the successor in interest to First Place Bank, a federally-chartered savings association that was headquartered in Warren, Ohio.  On January 1, 2013, First Place Bank was acquired by Talmer Bancorp, Inc., the parent company of Talmer.  On February 10, 2014, First Place Bank was merged into Talmer, and First Place Bank therefore no longer exists as an active entity.

2.      Defendant Kausmeyer is an individual who, upon information and belief, resides in Boca Raton, Florida.

3.      This Court has original diversity jurisdiction over the parties and the claims asserted herein pursuant to 28 U.S.C. §1332 because there is complete diversity between Plaintiff and Defendant, and the amount in controversy exceeds $75,000 in the aggregate.

4. Kausmeyer is subject to personal jurisdiction in this Court because he executed the contract at issue in this action in Warren, Ohio, and because he was employed by and agreed to perform services for First Place Bank in this judicial district. Further, Kausmeyer's actions have caused and are causing injury to Talmer in the Northern District of Ohio, where Talmer conducts business and where Kausmeyer could reasonably expect Talmer to be injured by his actions.

5. Venue in this Court is proper under 28 U.S.C. § 1391 because a substantial part of the events that give rise to the claims in this Complaint occurred in the Northern District of Ohio and because the Northern District of Ohio has a substantial connection to Talmer's claims.

## **GENERAL ALLEGATIONS**

6. Beginning in or about May 2011, Kausmeyer served as Chief Risk Officer of First Place Bank.

7. In 2010, First Place Bank and its then-parent company First Place Financial Corp. experienced financial distress, which led to the bank entering into a Supervisory Agreement with the Office of Thrift Supervision on or about March 1, 2011.

8. On or about June 13, 2011, Kausmeyer and First Place Bank entered into a Change in Control Severance Agreement (the "CIC Agreement"). A copy of the CIC Agreement is attached hereto as Exhibit A.

9. Among other things, the CIC Agreement provided that Kausmeyer would be entitled to a lump sum payment if there was an applicable change in control of First Place Bank, and within two years of that change in control, First Place Bank terminated Kausmeyer's employment or Kausmeyer terminated his employment with good reason (as defined in the CIC Agreement). (Ex. A, §3.)

10. The CIC Agreement expressly provided that any dispute arising under it was required to be adjudicated in an arbitration to take place within fifty miles of First Place Bank's main office in Warren, Ohio.  (Ex. A, §15.)

11. The initial term of the CIC Agreement continued until June 30, 2012.  (Ex. A, §1.)  In or about July 2011, First Place Bank's board of directors conditionally approved an extension of certain CIC agreements "subject to notice to and non-objection from the Office of Thrift Supervision, or its successor."  Thereafter, First Place Bank sought a notice of non-objection from the Office of the Comptroller of the Currency (the "OCC") for an extension of certain CIC agreements then in place (the OCC was the successor of the Office of Thrift Supervision).  The OCC declined to provide the requested notice of non-objection.  Despite further efforts, First Place Bank was unable to overcome the objections of the OCC to extension of the CIC agreements, and therefore the condition to extending the CIC agreements was not met.

12. Kausmeyer's CIC Agreement was not extended and expired pursuant to its terms on June 30, 2012.  Further, any purported right that Kausmeyer might have to payment under the CIC Agreement would be barred by the severance restrictions of 12 C.F.R. 359 and the TARP executive compensation rules 31 C.F.R. Part 30, et seq.

13. On January 1, 2013, First Place Bank was acquired by Talmer Bancorp, Inc.  That acquisition would have constituted a "Change in Control" pursuant to the CIC Agreement if it were still in effect.  Kausmeyer remained employed by First Place Bank subsequent to the Change in Control.

14. In or about July 2013, Kausmeyer sent a notice to First Place Bank's president and chief executive officer entitled "Notice of Condition leading to Termination for Good Reason" (the "Termination Notice").

15. In the Termination Notice, Kausmeyer asserted that certain conditions existed that amounted to "Good Reason" as defined in the CIC Agreement, which would permit him to voluntarily terminate his employment and assert a claim for the lump sum payment set forth in the CIC Agreement.

16. In or about October 2013, First Place Bank provided Kausmeyer a letter in which First Place Bank offered to pay Kausmeyer a Project Completion Bonus of $26,666 in return for his performance of certain tasks for First Place Bank and his release of all claims against First Place Bank (the proposed agreement is referred to herein as the "Project Completion Agreement"). First Place Bank's offer letter stated that the offer would expire on October 17, 2013. Because the parties were still negotiating the terms of the Project Completion Agreement and because Kausmeyer had to leave the state to attend to an emergency situation, First Place Bank extended the offer beyond the October 17, 2013 deadline.

17. Kausmeyer was represented by counsel with respect to his employment at First Place Bank and negotiation of the Project Completion Agreement. Kausmeyer requested certain changes to the proposed Project Completion Agreement, some of which were agreed to by First Place Bank.

18. Kausmeyer and First Place Bank ultimately executed the Project Completion Agreement in Warren, Ohio on November 8, 2013. (The Project Completion Agreement is attached hereto as Exhibit B.)

19. Kausmeyer understood the Project Completion Agreement to be a binding agreement, and he intended to be bound by the Project Completion Agreement at the time he executed it.

4

20. After the parties executed the Project Completion Agreement on November 8, 2013, Kausmeyer was paid the $26,666 Project Completion Bonus (minus applicable taxes) as specified in the Project Completion Agreement.

21. Among other things, Kausmeyer agreed in the Project Completion Agreement to "irrevocably and unconditionally waive, release, and discharge" First Place Bank (and its successors) from "liability for any and all claims or causes of action, both known and unknown, arising prior to you signing this agreement that you may have or claim to have against them, including, but not limited to, claims arising under or related to your employment and/or the termination of your employment" as well as claims for "breach of contract."  In addition to that broad release, Kausmeyer expressly agreed under the Project Completion Agreement to "waive any rights you may have that are related to or arise under that Change in Control Severance Agreement between you and [First Place Bank] dated effective as of June 13, 2011."  (Ex. B at 2-3.)

22. On November 8, 2013, Kausmeyer and First Place Bank executed another agreement entitled "Separation Agreement and General Release," which contained a provision permitting Kausmeyer to revoke the agreement within seven days of execution.  On November 15, 2013, Kausmeyer's legal counsel informed First Place Bank that Kausmeyer was exercising his right to revoke the Separation Agreement and General Release.

23. The Project Completion Agreement did not contain a clause that permitted a unilateral revocation by either party, and Kausmeyer did not inform First Place Bank that he wished to revoke the Project Completion Agreement.

24. Kausmeyer received and accepted the Project Completion Bonus as consideration for the Project Completion Agreement after he exercised his right to revoke the Separation Agreement and General Release.

25. Kausmeyer continued to serve as an employee of First Place Bank until his employment was terminated on or about November 19, 2013.

26. By the terms of the Project Completion Agreement, any claims Kausmeyer might have had under the CIC Agreement, including any claim for breach of the CIC Agreement, were terminated. Kausmeyer has no right to pursue such claims in arbitration or otherwise.

27. In entering the Project Completion Agreement and issuing the Project Completion Bonus to Kausmeyer, First Place Bank understood and intended that, to the extent Kausmeyer previously might have had any claims under the CIC Agreement, those claims were terminated by the Project Completion Agreement. Upon information and belief, Kausmeyer shared that understanding and intent at the time he executed the Project Completion Agreement and accepted the Project Completion Bonus.

28. The terms of the Project Completion Agreement, including the specific reference to any and all claims relating to Kausmeyer's employment, and specific reference to "any rights … that are related to or arise under" his CIC Agreement, reflect the parties' intention that any such claims were unconditionally waived and released.

29. The parties did not agree to arbitrate claims arising under the Project Completion Agreement. The parties could have included an arbitration provision in the Project Completion Agreement – as they did in the CIC Agreement – but they chose not to do so. The release provision in the Project Completion Agreement reflects the parties' intention to extinguish and

terminate all obligations under the CIC Agreement, including any obligation to arbitrate under that agreement.

30. On or about August 12, 2015, Kausmeyer sent a Demand for Arbitration to the American Arbitration Association (the "AAA"), purporting to assert a claim for breach of the CIC Agreement (the "Arbitration Action"). The AAA has designated the locale of the Arbitration Action to be Cleveland, Ohio.

31. The terms of the Project Completion Agreement unequivocally released the claim now asserted by Kausmeyer in the Arbitration Action. That claim is barred by the Project Completion Agreement.

32. Kausmeyer did not tender back the consideration that he received for the Project Completion Agreement before asserting his claim in the Arbitration Action.

33. Talmer has already incurred expenses, including but not limited to legal fees, as a result of Kausmeyer's assertion of a claim in the Arbitration Action.

34. Talmer is entitled to have this Court determine the scope and effect of the Project Completion Agreement and to prevent Kausmeyer's continuing violation of its terms.

## CLAIMS FOR RELIEF

## COUNT I:  DECLARATORY JUDGMENT

35. Talmer incorporates by reference as if fully rewritten herein its averments in all preceding paragraphs of this Complaint.

36. Pursuant to 22 U.S.C. § 2201(a), this Court has the power to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Specifically, this Court has the power to determine questions of contract interpretation, construction, validity and enforcement.

37. This action for declaratory relief is within the jurisdiction of this Court because, pursuant to 28 U.S.C. §1332, this Court would have jurisdiction of an action on the same claim in which Talmer sought relief other than a declaratory judgment.

38. An actual controversy exists between Talmer and Kausmeyer requiring the Court to interpret the Project Completion Agreement and declare the rights and obligations of the parties with respect to it. Kausmeyer has violated and continues to violate the terms of the Project Completion Agreement, and declaratory judgment is necessary to guide Talmer's future conduct with respect to Kausmeyer in order to preserve its legal rights.

39. The Project Completion Agreement is intended to waive and release, and expressly references, any and all claims relating to Kausmeyer's employment, including "any rights … that are related to or arise under" CIC Agreement.

40. The terms of the Project Completion Agreement unequivocally waived and released the claim now asserted by Kausmeyer for breach of the CIC Agreement in the Arbitration Action, and that claim is barred by the Project Completion Agreement.

41. Kausmeyer was aware of his potential claim to receive a lump sum payment under the CIC Agreement at the time that he executed the Project Completion Agreement.

42. Because Kausmeyer did not tender back the consideration that he received for the Project Completion Agreement before asserting his claim in the Arbitration Action, he is barred from asserting that the release is invalid under Ohio law.

43. Kausmeyer has demonstrated by his actions that, in the absence of declaratory judgment, he will continue to cause injury to Talmer by pursuing the Arbitration Action in violation of the Project Completion Agreement. If Talmer is forced to arbitrate Kausmeyer's claims under the CIC Agreement, Talmer will be forced to incur substantial additional expenses

relating to claims that were clearly and unequivocally waived and released by Kausmeyer. The existence of Talmer's breach of contract claim, which seeks relief for damages Kausmeyer has already caused Talmer to suffer, does not preclude declaratory relief in this case.

44. Talmer is entitled to a declaration that Kausmeyer's claim for breach of the CIC Agreement was released and terminated pursuant to the Project Completion Agreement and that he has no right to pursue that claim in the Arbitration Action or otherwise.

45. Talmer is entitled to an adjudication of its rights under the Project Completion Agreement before Kausmeyer may pursue any claim for arbitration under the CIC Agreement.

46. The parties did not agree to arbitrate claims arising under the Project Completion Agreement. If Talmer is forced to arbitrate Kausmeyer's claims under the CIC Agreement, it will be deprived of its right to have claims under the Project Completion Agreement adjudicated in a court of law.

47. As this dispute concerns whether there exists a valid arbitration clause, any question of arbitrability must be determined by a court of law.

48. Therefore, this Court must determine the scope and effect of the Project Completion Agreement, and specifically whether it operated to release Kausmeyer's claims asserted in the Arbitration Action, prior to any arbitration of claims under the CIC Agreement may proceed.

49. Immediate and speedy relief is necessary to prevent Kausmeyer from continuing to cause injury to Talmer by pursuing the Arbitration Action. Pursuant to Fed. R. Civ. P. 57, this Court may order a speedy hearing of this action and may advance it on the Court's calendar.

## COUNT II: BREACH OF CONTRACT

50. Talmer incorporates by reference as if fully rewritten herein its averments in all preceding paragraphs of this Complaint.

51. The Project Completion Agreement is a valid and enforceable contract between Talmer and Kausmeyer.  The terms in the Project Completion Agreement reflect a meeting of the minds between Talmer and Kausmeyer as to all of the terms in the Project Completion Agreement.  The terms of the Project Completion Agreement are clear and unambiguous.

52. The terms of the Project Completion Agreement have not been amended, modified, or revoked.

53. Talmer fully performed its obligations under the Project Completion Agreement, including by issuing the Project Completion Bonus to Kausmeyer in or about November 2013.  That payment constituted full and adequate consideration for the unconditional waivers and releases he provided in the Project Completion Agreement.

54. Kausmeyer accepted Talmer's performance by retaining the Project Completion Bonus and other benefits conferred by Talmer pursuant to the terms of the Project Completion Agreement.  Kausmeyer has not returned to Talmer, and has not offered to return to Talmer, the Project Completion Bonus or other benefits he received pursuant to the Project Completion Agreement.

55. As a result of the release granted by Kausmeyer in the Project Completion Agreement, Kausmeyer is barred from asserting any claim relating to his employment or the termination of his employment, including any claims "that are related to or arise under" his CIC Agreement.

56. Kausmeyer breached the terms of the Project Completion Agreement by asserting claims, including in the Arbitration Action, that he irrevocably and unconditionally waived and released by the terms of the Project Completion Agreement.

57. Kausmeyer's breach of the Project Completion Agreement has caused Talmer to suffer damages. Talmer has incurred legal fees, costs, and other expenses as a direct and proximate result of Kausmeyer's filing the Arbitration Action and otherwise pursuing claims that were unconditionally terminated by the Project Completion Agreement. Talmer will continue to incur damages unless and until Kausmeyer is restrained from further breaching the Project Completion Agreement.

## **REQUEST FOR RELIEF**

WHEREFORE, Talmer requests:

(1) That this Court issue a Temporary Restraining Order and Preliminary and Permanent Injunction as follows:

    (a) restraining and enjoining the continued prosecution or adjudication of the Arbitration Action until such time as this Court determines the scope and effect of the Project Completion Agreement; and

    (b) restraining and enjoining defendant Gary Kausmeyer, and all those in active concert or participation with him, from directly or indirectly prosecuting or pursuing any claim for arbitration arising under the CIC Agreement until such time as this Court determines the scope and effect of the Project Completion Agreement; and

(2) That this Court enter a judgment declaring (a) that the Project Completion Agreement is a valid and enforceable contract; (b) that the terms of the Project Completion Agreement bar any claims purportedly arising under the CIC Agreement, including the claim asserted in the

Arbitration Action; and (c) that the Project Completion Agreement terminated any and all obligations under the CIC Agreement, including any obligation to arbitrate claims purportedly arising thereunder; and

    (3)  That Talmer be granted as relief money damages for Kausmeyer's conduct, including exemplary and/or punitive damages, and all other appropriate damages, as well as all interest, costs and disbursements of this action, including actual attorneys' fees and costs as provided by law, and such other relief as this Court may deem just and proper.

    Respectfully submitted,

    /s/ Robert F. Ware

    Robert F. Ware (*Ohio 0055515)*
    Rob.Ware@ThompsonHine.com
    Martin J. Mackowski (*Ohio 0087338*)
    Martin.Mackowski@ThompsonHine.com
    THOMPSON HINE LLP
    3900 Key Center
    127 Public Square
    Cleveland, Ohio 44114
    Telephone:  (216) 566-5500

    Attorneys for Plaintiff Talmer Bank and Trust