# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **TALMER BANK AND TRUST** | ) | **CASE NO. 4:15 CV 1850** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE BENITA Y. PEARSON** |
| **vs.** | ) | |
| | ) | |
| **GARY KAUSMEYER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## PLAINTIFF TALMER BANK AND TRUST'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(a), Plaintiff Talmer Bank and Trust ("Talmer") hereby moves this Court to enter summary judgment in Talmer's favor as to Count I of the Complaint and as to each of Defendant Gary Kausmeyer's Counterclaims in this action. The record evidence establishes that there is no genuine dispute as to any material fact, and Talmer is entitled to judgment as a matter of law as to each of those claims.

With respect to Count I of Talmer's Complaint, Talmer specifically seeks a declaration (a) that the Project Completion Agreement entered into by First Place Bank (a predecessor of Talmer) and Gary Kausmeyer is a valid and enforceable contract, and (b) that the terms of the Project Completion Agreement bar any claims purportedly arising under a Change in Control Severance Agreement previously entered into by Kausmeyer and First Place Bank.

A memorandum in support of this motion is attached.

Respectfully submitted,

/s/ Robert F. Ware
Robert F. Ware (OH 0055515)
Jennifer S. Roach (OH 0074143)
Rob.Ware@ThompsonHine.com
THOMPSON HINE LLP
3900 Key Center, 127 Public Square
Cleveland, Ohio 44114
Telephone:  (216) 566-5500

Attorneys for Plaintiff Talmer Bank and Trust

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **TALMER BANK AND TRUST** | ) | **CASE NO. 4:15 CV 1850** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE BENITA Y. PEARSON** |
| **vs.** | ) | |
| | ) | |
| **GARY KAUSMEYER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM IN SUPPORT OF TALMER BANK**
**AND TRUST'S MOTION FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

**Page**

MEMORANDUM IN SUPPORT..................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 1

A.   Kausmeyer's Background and Role as First Place Bank's Executive Vice President and Chief Risk Officer........................................................................................... 1

B.   Kausmeyer's Assertion of a Claim under His Change in Control Severance Agreement.. 2

C.   The Negotiation of the Project Completion Agreement. ........................................ 3

    1.   Kausmeyer Elects to Negotiate an Agreed Termination of His Employment. ....... 3

    2.   Kausmeyer and First Place Bank Exchange Multiple Drafts of the Termination Documents. ........................................................................................................ 3

    3.   After Kausmeyer Fails to Timely Respond, First Place Bank Initiates the Process to Involuntarily Terminate Kausmeyer's Employment. .................................... 5

    4.   Kausmeyer Insists that He Will Execute the Termination Documents.................. 6

D.   The Execution of the Project Completion Agreement....................................... 7

E.   Kausmeyer's Rescission of the Severance Agreement and Termination by First Place Bank. .............................................................................................................. 8

F.   Kausmeyer's Receipt of the Project Completion Bonus....................................... 8

G.   Kausmeyer's Initiation of Arbitration Proceedings and Partial Tender of the Release Proceeds to Talmer. ................................................................................... 9

ARGUMENT ................................................................................................................. 10

I.   Talmer is Entitled to Summary Judgment on Count I of its Complaint and Each of Kausmeyer's Counterclaims Because the PCA Release is Valid and Enforceable. ......... 10

    A.   The Release is valid and enforceable on its face and bars Kausmeyer's claim under the CICS Agreement............................................................................... 10

    B.   Kausmeyer's Defenses Fail as a Matter of Law. .................................... 11

    C.   Kausmeyer's Failure to Tender Back the Full Amount of the Consideration for the Release Bars His Defenses and Renders the Release Enforceable. ..................... 18

II.   Kausmeyer's Counterclaims for Fraud and Breach of Ohio Rev. Code § 2307.70(A)(1) Fail for Independent Reasons................................................................................. 18

    A.   Kausmeyer Cannot Establish Injury Proximately Caused by the Fraud.............. 18

    B.   There Is No Civil Cause of Action Created by Section 2307.60(A).................... 20

CONCLUSION............................................................................................................... 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Burnside v. Washtenaw Mortg. Co.*,
   No. C-1-01-359, 2002 U.S. Dist. LEXIS 13325 (S.D. Ohio 2002) .......................................17

*Captiva, Inc. v. Viz Communications, Inc.*,
   85 Fed. Appx. 501 (6th Cir. 2004) .......................................................................................17

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) .......................................................10

*Cobra Pipeline Co. v. Gas Natural, Inc.*,
   132 F. Supp. 3d 945, 2015 U.S. Dist. LEXIS 124236 (N.D. Ohio 2015) ...............................20

*Exal Corp. v. Roeslein & Assocs.*,
   No. 4:12cv1830, 2015 U.S. Dist. LEXIS 107951 (N.D. Ohio 2015) (Pearson,
   J.) .......................................................................................................................................14

*FDIC v. Commonwealth Land Title Ins. Co.*,
   902 F. Supp. 2d 1048 (N.D. Ohio 2012) (Pearson, J.) ..........................................................17

*Guarino v. Brookfield Twp. Trustees*,
   980 F.2d 399 (6th Cir. 1992) ...............................................................................................10

*Infocision Mgmt. Corp. v. Found. for Moral Law, Inc.*,
   No. 5:08cv13422009, U.S. Dist. LEXIS 23640 (N.D. Ohio 2009) .......................................19

*Johnson v. Karnes*,
   398 F.3d 868 (6th Cir. 2005) ...............................................................................................10

*Langley v. FDIC*,
   484 U.S. 86, 108 S. Ct. 396, 98 L. Ed. 2d 340 (1987) .........................................................17

*Micrel, Inc. v. TRW, Inc.*,
   No. 1:02cv2539, 2005 U.S. Dist. LEXIS 9430 (N.D. Ohio 2005) .......................................17

*ODW Logistics, Inc. v. Karmaloop, Inc.*,
   No. 2:12cv00996, 2013 U.S. Dist. LEXIS 96309 (S.D. Ohio 2013) ...............................12, 13

*Scotts Co. LLC v. Liberty Mut. Ins. Co.*,
   606 F. Supp. 2d 722 (S.D. Ohio 2009) .................................................................................16

*Sequa Corp. v. Elyria Foundry Corp.*,
   No. 1:03cv2508, 2006 U.S. Dist. LEXIS 70817 (N.D. Ohio 2006) .......................................11

*Sollenberger v. Sollenberger*,
    No. 3:15cv00213, 2016 U.S. Dist. LEXIS 39528 (S.D. Ohio 2016) ......................................20

*Thompson v. Transam Trucking, Inc.*,
    2:08cv927, 2011 U.S. Dist. LEXIS 61176 (S.D. Ohio 2011) ..................................................15

*Weaver v. Moamis*,
    2016 U.S. Dist. LEXIS 43865 (N.D. Ohio 2016) (Pearson, J.) ..............................................10

**State Cases**

*Aetna Insurance Co. v. Reed*,
    33 Ohio St. 283 (1877) ...........................................................................................................16

*Amerifirst Savings Bank of Xenia, Ohio v. Krug*,
    136 Ohio App. 3d 468 (Ohio Ct. App. 1999) ........................................................................15

*Blodgett v. Blodgett*,
    49 Ohio St. 3d 243 (Ohio 1990)........................................................................................12, 14

*Burke Lakefront Services v. Lemieux*,
    2002-Ohio-4060 (Ohio Ct. App. 2002)..................................................................................16

*Casserlie v. Shell Oil Co.*,
    2007-Ohio-2633 (Ohio Ct. App. 2007)............................................................................12, 13

*Citizens Banking & Savings Co. v. Spitzer, Rorick & Co.*,
    65 Ohio App. 309 (Ohio Ct. App. 1938) ...............................................................................16

*Covey v. Natural Foods, Inc.*,
    2004-Ohio-1336 (Ohio Ct. App. 2004)..................................................................................15

*Crown Prop. Dev. Inc. v. Omega Oil Co.*,
    113 Ohio App. 3d 647 (Ohio Ct. App. 1996) ........................................................................15

*DiPietro v. DiPietro*,
    10 Ohio App. 3d 44 (Ohio Ct. App. 1983) ............................................................................12

*Gentile v. Ristas*,
    160 Ohio App. 3d 765 (Ohio Ct. App. 2005) ........................................................................14

*Goodyear Tire & Rubber Co. v. Aetna Casualty & Sur. Co.*,
    No. 16993, 1995 Ohio App. LEXIS 2975 (Ohio Ct. App. 1995) ...........................................17

*Graves v. Mental Health Management, Inc.*,
    No. 59668, 1991 Ohio App. LEXIS 6094 (Ohio Ct. App. 1991) ...........................................12

*Haller v. Borror Corp.*,
    50 Ohio St. 3d 10 (1990).................................................................................................11, 18

*Jacob v. Grant Life Choices Fitness Center*,
No. 95APE12-1633, 1996 Ohio App. LEXIS 2313 (Ohio Ct. App. 1996) ...........................11

*Kallergis v. Quality Mold, Inc.*,
2007-Ohio-6047 (Ohio Ct. App. 2007)...................................................................................15

*Knight v. Hughes*,
No. 86 AP-1106, 1987 Ohio App. LEXIS 8786 (Ohio Ct. App. 1987)..................................11

*Lapos Constr. Co. v. Leslie*,
2006-Ohio-5812 (Ohio Ct. App. 2006)...................................................................................15

*Lewis v. Mathes*,
161 Ohio App. 3d 1 (Ohio Ct. App. 2005) .............................................................................18

*Lynch v. Dial Finance Co. of Ohio No. 1, Inc.*,
101 Ohio App.3d 742 (Ohio Ct. App. 1995) ..........................................................................16

*State ex rel. Madden v. Windham Exempted Village School Dist. Bd. of Education*,
42 Ohio St. 3d 86 (Ohio 1989)................................................................................................17

*Maust v. Bank One Columbus. N.A.*,
83 Ohio App. 3d 103 (Ohio Ct. App. 1992) ......................................................................13, 18

*Medina Supply Co. v. Corrado*,
116 Ohio App. 3d 847 (Ohio Ct. App. 1996) .........................................................................13

*Miller v. Bieghler*,
123 Ohio St. 227 ......................................................................................................................18

*Picklesimer v. Baltimore & Ohio R. Co.*,
151 Ohio St. 1 (Ohio 1949).....................................................................................................18

*Ritchie v. Cordray*,
10 Ohio App. 3d 213 (Ohio Ct. App. 1983) ...........................................................................11

*Shallenberger v. Motorists Mut. Ins. Co.*,
167 Ohio St. 494 (Ohio 1958).................................................................................................18

*Sheet Metal Workers Natl. Pension Fund v. Bryden House Ltd.*,
130 Ohio App. 3d 132..............................................................................................................13

*Task v. Nat'l City Bank*,
No. 65617, 1994 Ohio App. LEXIS 437 (Ohio Ct. App. 1994)..............................................11

*Volbers-Klarich v. Middletown Mgt., Inc.*,
125 Ohio St. 3d 494 (2010)......................................................................................................14

iv

*Wall v. Firelands Radiology, Inc.*,
106 Ohio App. 3d 313 (Ohio Ct. App. 1995) .........................................................................17

**State Statutes**

Ohio Rev. Code § 2307.60(A) .........................................................................20

Ohio Rev. Code § 2307.70(A)(1) .........................................................................10, 18, 20

Ohio Rev. Code § 2913.43 .........................................................................20

**Rules**

Fed. R. Civ. P. 56(a) .........................................................................10

**Other Authorities**

3 Williston on Contracts § 7:11 (4th ed.) .........................................................................17

## STATEMENT OF THE ISSUES TO BE DECIDED

(1)     Whether the record evidence establishes that terms of the release contained within a Project Completion Agreement entered into by First Place Bank (a predecessor of plaintiff Talmer Bank and Trust) and defendant Gary Kausmeyer operate to bar any claim by Kausmeyer for breach of a Change in Control Severance Agreement that he previously entered into with First Place Bank.

(2)     Whether each of Kausmeyer's defenses to Talmer's claim seeking enforcement of the Project Completion Agreement release fail based on the evidence and applicable law, which establishes that Kausmeyer negotiated the terms of the Project Completion Agreement while represented by legal counsel and was not fraudulently induced or wrongfully coerced to enter into that agreement.

(3)     Whether each of Kausmeyer's three Counterclaims (namely, common law fraud, violation of Ohio Rev. Code § 2307.70(A)(1), and rescission) fail based on the same law and evidence that establishes the Project Completion Agreement to be valid and enforceable.

(4)     Whether Kausmeyer's Counterclaims for common law fraud and violation of Ohio Rev. Code § 2307.70(A)(1) fail for the independent reason that Kausmeyer cannot show injury arising from the alleged fraud, since his claim for breach of the Change in Control Severance Agreement has not been impaired by any improper action of Talmer.

(5)     Whether Kausmeyer's Counterclaim for violation of Ohio Rev. Code § 2307.70(A)(1) fails for the independent reason that Ohio law does not recognize a private right of action under Ohio Rev. Code § 2307.60(A).

## SUMMARY OF THE ARGUMENT

Plaintiff Talmer Bank and Trust ("Talmer") is entitled to enforce the express terms of the release contained in a Project Completion Agreement ("PCA") entered into by defendant Gary Kausmeyer and First Place Bank (a predecessor of Talmer) in 2013, which bars any claim by Kausmeyer under a Change in Control Severance Agreement that he had entered into with First Place Bank in 2011.  There is no dispute that Kausmeyer (i) negotiated the terms of the PCA over several weeks and was represented by counsel in so doing, (ii) executed the PCA, and (iii) was paid the $26,666 bonus called for under the PCA.

Kausmeyer's defense of duress – which is based on the fact that First Place Bank withheld Kausmeyer's paycheck after he delayed in finalizing the agreement and First Place Bank believed he was no longer negotiating in good faith – fails as a matter of law.  The evidence establishes that Kausmeyer had committed to sign the agreement before his paycheck was withheld.  Further, First Place Bank was entitled to withhold Kausmeyer's paycheck as part of its termination process, which it had made clear from the outset would be the alternative to a negotiated resolution with Kausmeyer.  Moreover, as a sophisticated party who was represented by counsel, Kausmeyer cannot rely on duress as a basis for avoiding a contract based on the withholding of a single paycheck.

Similarly, Kausmeyer's defenses of fraudulent inducement and estoppel fail based on the indisputable facts that – far from being tricked into signing the PCA at First Place Bank's offices – Kausmeyer had negotiated the terms of the PCA for weeks (while represented by counsel) and had asked that the PCA be printed and "ready to sign" when he arrived at the office.  Under these circumstances, Kausmeyer cannot be said to have reasonably relied on the alleged false statement made to him moments before he signed the PCA.

Kausmeyer's defense of failure of consideration fails because Kausmeyer received the consideration called for under the PCA (namely, the $26,666 bonus).  Kausmeyer's after-the-fact claim that he believed the payment was made to him as reimbursement of outstanding expenses cannot establish a failure of consideration.

Each of Kausmeyer's counterclaims is premised on the claim that Kausmeyer was fraudulently induced to enter the PCA, and therefore each counterclaim fails because the PCA is valid and enforceable.  Further, Kausmeyer's counterclaims for common law fraud and violation of Ohio Rev. Code § 2307.70(A)(1) fail for the independent reason that Kausmeyer cannot show injury arising from the alleged fraud, since his claim for breach of the Change in Control Severance Agreement has not been impaired by any improper action of Talmer.  Finally, Kausmeyer's Counterclaim for violation of Ohio Rev. Code § 2307.70(A)(1) fails for the independent reason that Ohio law does not recognize a private right of action under Ohio Rev. Code § 2307.60(A).

## <u>REQUIRED CERTIFICATIONS</u>

Plaintiff Talmer Bank and Trust hereby certifies as follows:

(1)    This case has been assigned to the Standard Track.  This memorandum adheres to the page limitation (20 pages) for dispositive motions set forth in Local Rule 7.1(f).

(2)    Pursuant to ¶13 of the Court's Case Management Plan, Dkt. 15, prior to filing its dispositive motion, counsel for Talmer submitted a written request for judgment to counsel for Kausmeyer.  Counsel for Kausmeyer responded denying Talmer's request for judgment. Further, lead counsel for the parties conferred regarding proposed stipulations of fact but were unable to agree on written stipulations.

## MEMORANDUM IN SUPPORT

Plaintiff Talmer Bank and Trust ("Talmer") brought this action seeking enforcement of a release executed by defendant Gary Kausmeyer.  Kausmeyer has filed Counterclaims alleging that he was defrauded into signing the release because, at the time he signed the document, the bank allegedly told him it was null and void but was needed only for regulatory purposes.

The undisputed evidence in this case is far different than Kausmeyer's allegations and leaves no doubt that the release is valid and enforceable.  That evidence makes clear that, prior to the meeting at the bank's offices where the alleged "fraud" took place, Kausmeyer negotiated the terms of the agreements for more than eight weeks and was represented by counsel in connection with those negotiations.  Far from being induced into signing by comments at the meeting, Kausmeyer had committed on multiple occasions *before the meeting* to sign the documents.  In fact, the night before the meeting, Kausmeyer sent an email requesting that the bank have the documents printed and "*ready to sign*" when he arrived at the bank's offices the next day.

In short, there is overwhelming undisputed evidence – most of it based on Kausmeyer's own testimony and contemporaneous emails – that Kausmeyer did not rely on any allegedly fraudulent statements made to him by First Place Bank.  Because Kausmeyer cannot establish fraudulent inducement as a matter of law, judgment may be entered in favor of Talmer on Count I of its Complaint and against Kausmeyer on all of his Counterclaims.

## STATEMENT OF FACTS

### A.     Kausmeyer's Background and Role as First Place Bank's Executive Vice President and Chief Risk Officer.

Kausmeyer was hired as Executive Vice President and Chief Risk Officer at First Place Bank in June 2011.  He had previously worked as an accountant and auditor for Grant Thornton, and then as a vice president in the risk management function of Bank Atlantic.  Kausmeyer holds

a bachelor's degree in accounting and legal studies, as well as a masters in accounting, and is a licensed CPA.  (Deposition of Gary Kausmeyer (hereafter "Kausmeyer Dep."), Ex. 1 at 9-12.)

As Chief Risk Officer of First Place Bank, Kausmeyer was responsible for managing the regulatory compliance function for First Place Bank.  In that role, he was ultimately responsible for overseeing the bank's compliance with orders from the bank's primary regulator, the Office of the Comptroller of the Currency ("OCC").  Kausmeyer directed and documented corrective actions taken by First Place Bank in response to the OCC's orders, and he routinely communicated with the OCC with respect to those matters.  (*Id.* at 68-69.)

**B.    Kausmeyer's Assertion of a Claim under His Change in Control Severance Agreement.**

In June 2011, Kausmeyer and First Place Bank executed a Change in Control Severance Agreement (the "CICS Agreement"), which would entitle Kausmeyer to certain benefits if, after a "change in control" of First Place Bank, he was terminated or left First Place Bank for "Good Reason" as defined in the agreement.  (Cmplt. Dkt. 1 at ¶¶8-9; Ans. Dkt. 13 at ¶¶8-9.)  On January 1, 2013, First Place Bank was acquired by Talmer Bancorp, Inc., a transaction that qualified as a "change in control" pursuant to the CICS Agreement.  (Cmplt., Dkt. 1 at ¶13; Ans., Dkt. 13 at ¶13.)

Kausmeyer remained employed by First Place Bank after the change in control, but on Friday, July 12, 2013, he submitted a claim based on his CICS Agreement (the "Claim") to First Place Bank's President and CEO.  (Exhibit 2; Kausmeyer Dep. 42-43.) [1]  Prior to submitting the Claim, Kausmeyer had been made aware that it was First Place Bank's position that the CICS Agreement had been terminated and he would therefore not be entitled to any payment under that agreement.  (Kausmeyer Dep. 52.)  Nevertheless, in his Claim, Kausmeyer alleged that First

---

[1] Kausmeyer was represented by legal counsel in connection with the preparation and submission of the Claim to First Place Bank.  (Kausmeyer Dep. 48.)

Place Bank had taken various actions to reduce Kausmeyer's job responsibilities, which amounted to "Good Reason" for termination of his employment under the CICS Agreement. (*Id.*)  Shortly after submitting his Claim, Kausmeyer was placed on paid leave from his employment at First Place Bank.  (Kausmeyer Dep. 42, 57, 93.)

### C.    The Negotiation of the Project Completion Agreement.

Beginning in September 2013, Kausmeyer and First Place Bank engaged in detailed negotiations regarding the terms of his departure from the bank.

#### 1.    *Kausmeyer Elects to Negotiate an Agreed Termination of His Employment.*

On September 5, 2013, First Place Bank ended Kausmeyer's paid leave, and Kausmeyer met with various members of First Place Bank's HR department.  (Kausmeyer Dep. 57, 62.)  At the meeting, Sandy Kuohn, the Chief HR Officer at Talmer, indicated to Kausmeyer that First Place Bank intended to terminate Kausmeyer's employment.  (Kausmeyer Dep. 62-64; Declaration of Sandy Kuohn "Kuohn Decl.", Exhibit 3 at ¶2.)  Kausmeyer was told that he had two options:  he could be terminated immediately, without the possibility of a bonus or severance arrangement, or he could enter into discussions about agreed terms for his termination. Kausmeyer stated that he wanted to discuss an agreement.  (*Id.*)

#### 2.    *Kausmeyer and First Place Bank Exchange Multiple Drafts of the Termination Documents.*

The day after their September 5 meeting, First Place Bank sent a set of draft documents to Kausmeyer for his review.  (Exhibit 4; Kausmeyer Dep. 65-66.)  The documents included draft versions of three documents:  a cover letter, a Project Completion Agreement (the "PCA") and a Separation Agreement.  (*Id.*)  Among other provisions, the PCA contained certain obligations for Kausmeyer's continued employment at First Place Bank through November 8, 2015 and required First Place Bank to pay Kausmeyer a Project Completion Bonus of $26,666.

(*Id.*)  The PCA also contained a general release of all claims against First Place Bank, and specifically referenced the waiver of all of Kausmeyer's claims relating to or arising under the CICS Agreement.  (*Id.*)

Kausmeyer reviewed the termination documents and forwarded them to his lawyers for their comments.  (Exhibit 5; Kausmeyer Dep. 68-69.)  Thereafter, Kausmeyer discussed certain comments that he had on the documents with Sandy Kuohn.  (Kausmeyer Dep. 69.)  After that discussion, First Place Bank provided Kausmeyer with a revised set of documents on October 2, 2013.  (Exhibit 6; Kausmeyer Dep. 70.)  Once again, Kausmeyer reviewed those documents with his counsel.  (*Id.* at 71.)

On October 8, 2013, Kausmeyer sent a detailed email to First Place Bank setting forth additional comments and proposed revisions to the draft agreements.  (Exhibit 7; Kausmeyer Dep. 73-74.)  Kausmeyer's comments included proposed changes to the PCA, which Talmer later accepted.  (Exhibit 8; Kausmeyer Dep. 73-74, 77-78.)  When he sent his comments, Kausmeyer stated to First Place Bank that he "***would be looking to execute these documents as fast as they can be approved and updated.***"  (Exhibit 7 at 1.)

On October 15, 2013, Talmer sent revised versions of the termination documents to Kausmeyer for his review.  (Exhibit 8.)  Among the documents that Talmer sent was a revised version of the PCA, which had been modified to incorporate some of Kausmeyer's comments.  (Exhibit 8; Kausmeyer Dep. 82.)  Kausmeyer again forwarded the documents to his attorney for further review.  (Kausmeyer Dep. 82.)  Kausmeyer asked for additional time to review the documents and stated that he would "***get back to you with a reasonable date  that I would like to come in and execute the final version of all documents,***" reiterating his intention to "bring this matter to a quick close."  (Exhibit 9 at 2; Kausmeyer Dep. 86.)

**3.**    ***After Kausmeyer Fails to Timely Respond, First Place Bank Initiates the Process to Involuntarily Terminate Kausmeyer's Employment.***

Despite his expressed intentions to act promptly, Kausmeyer did not suggest a meeting date to execute the documents, and after two weeks First Place Bank's patience wore thin.  (*See* Kuohn Decl. at ¶4.)  Kuohn became concerned that Kausmeyer was not negotiating in good faith and did not intend to finalize the agreements.  (*Id.*)  As had been previously discussed with Kausmeyer, if he and the bank could not agree on terms for his departure, his employment would simply be terminated.  The termination process would involve holding Kausmeyer's last paycheck so that any outstanding charges or expenses could be reconciled against the amounts remaining to be paid in a final payment.  (Kuohn Decl. at ¶¶4-5.)

On October 28, 2013, Kuohn sent an email to Kausmeyer stating that the versions of the agreements sent on October 15 "reflected all of the changes we [First Place Bank] were willing to make."  (Exhibit 10; Kausmeyer Dep. 92-95.)  Kuohn invited Kausmeyer (who was staying in his home in Florida at the time) to simply sign the documents and send them by overnight mail to First Place Bank for counter-signatures.  (*Id.*)  She made clear that if he did not execute the documents by the next day, his paycheck would be held and he would be terminated.  (Exhibit 10, 11; Kausmeyer Dep. 94.)  Kausmeyer understood that the threat to withhold his paycheck meant that, absent a signed agreement, the bank was going to revert to the original alternative presented to Kausmeyer, namely, involuntary termination of his employment.  Kausmeyer testified:

> Q:    And did you understand from these statements from Ms. Kuohn that she was essentially saying that the bank would no longer negotiate the agreements and would revert back to its position that it was just going to terminate you if you didn't get the documents back?
>
> A:    When I received it, yes, I would have understood that.

(Kausmeyer Dep. 94.)  Kausmeyer did not respond before October 29, and his November 1

5

paycheck was withheld by First Place Bank in accordance with its standard termination practice. (Kuohn Decl. at ¶6.)

### 4. *Kausmeyer Insists that He Will Execute the Termination Documents.*

On Friday, November 1, 2013, Kausmeyer finally responded to Kuohn's emails.  He objected to the bank's withholding his paycheck based on "the allegations that I would not keep my word and sign the documents."  (Exhibit 12 at p.6; Kausmeyer Dep. 96.)  As Kausmeyer explained in his deposition:

> Q:    And then you indicate that you were unhappy with the bank for holding your paycheck "and the allegations that I would not keep my word and sign the documents."  Do you see that?
>
> A:    Yes.
>
> Q:    ***So at this point, you had essentially committed -- in your mind, you had committed to the bank to sign the documents?***
>
> A:    ***Yes.***
>
> Q:    And you were unhappy that the bank wouldn't take you at your word that you would do that?
>
> A:    I state that I was confused, yes.

(Kausmeyer Dep. 96, emphasis added.)  Kausmeyer's email concluded emphatically:  "I am open to your suggestions as to how to proceed, ***keeping in mind I am confirming that I am signing the documents.***"  (Ex. 12 at 6.)

After making clear his promise to execute the PCA and the other documents, Kausmeyer committed to travel to First Place Bank's offices by the following Thursday, November 7.  (Ex. 12 at 4; Kausmeyer Dep. 100.)  But he did not arrive at the bank on Thursday, and Kuohn informed him that if he did not execute the documents by the following day, the bank would complete the termination process and terminate Kausmeyer's employment.  (Exhibit 12 at 2; Kausmeyer Dep. 100-101.)  Kausmeyer promised to be at the bank's offices the next day and

asked them to have "***two hard copies of the documents ready to sign***."  (Exhibit 12 at 1;

Kausmeyer Dep. 101.)  Kausmeyer fully acknowledged his commitment to sign the documents

in his deposition:

> Q:     And your response is, "I would like to meet after lunch. If the Bank can
>         have two hard copies of the documents ready to sign, I would be greatly
>         appreciative."  Do you see that?
>
> A:     Yes.
>
> Q:     So you asked for them to actually print out the documents, have them
>         ready, right?
>
> A:     Yes.
>
> Q:     Never asked for any changes, correct?
>
>                 * * *
>
> A:     No new changes, no.
>
> Q:     No new changes, correct?
>
> A:     Correct.

(Kausmeyer Dep. 101.)

> **D.     The Execution of the Project Completion Agreement.**

Kausmeyer arrived at First Place Bank's offices in the afternoon of Friday, November 8.

As he had requested, the documents had been printed and were ready for him to sign.

(Kausmeyer Dep. 102.)  Kausmeyer met with David Wolfe, then the assistant general counsel of

First Place Bank, and Karen Tomlinson, a member of First Place Bank's HR department.  (*Id.*)

When Kausmeyer reviewed the printed documents, he noted that the Project Completion

Agreement was not dated with the current date, which was November 8.  (*Id.* at 106.)  The PCA

is in the form of a letter agreement, so the first page bore the date of October 15, 2013, which

was the date that First Place Bank had sent the final revision to Kausmeyer.  (*Id.* at 105-106.)

7

Kausmeyer claims that when he told Mr. Wolfe that the document should be re-dated, Wolfe told him that the date did not need to be changed because it was for "regulatory purposes only." (*Id.* at 106.)[2] Kausmeyer proceeded to sign the documents, and then was given copies of the final executed versions. (Exhibits 13, 14; Kausmeyer Dep. 102.) After Kausmeyer left First Place Bank's premises on November 8 with copies of the signed PCA and Separation Agreement, he had no further direct contact with anyone from First Place Bank regarding those documents. (Kausmeyer Dep. 115.)

### E. Kausmeyer's Rescission of the Severance Agreement and Termination by First Place Bank.

On November 15, 2013, just one week after Kausmeyer executed the heavily negotiated Separation Agreement, Kausmeyer obtained new counsel who sent a notice to First Place Bank exercising Kausmeyer's right to rescind the Separation Agreement. (Exhibit 15; Kausmeyer Dep. 137-138.) Kausmeyer did not attempt to rescind or revoke the Project Completion Agreement that he had signed contemporaneously with the Separation Agreement. Shortly thereafter, First Place Bank sent a letter to Kausmeyer's counsel terminating Kausmeyer's employment. (Exhibit 16; Kausmeyer Dep. 141-142.)

### F. Kausmeyer's Receipt of the Project Completion Bonus.

On November 15, 2013, Kausmeyer received the Project Completion Bonus amount of $26,666, which after applicable tax withholdings resulted in a net deposit into Kausmeyer's bank account of $19,079.52.[3] (Kuohn Decl. ¶8.) Kausmeyer's bank records show that, a few days later, the funds were removed and then re-deposited into his account. (Kausmeyer Dep. 122-

---

[2] Wolfe denies stating that the document was needed for "regulatory purposes" or would be "null and void" absent an updated deadline, however this factual dispute is not material to the outcome of the present motion, and the Court need not resolve it.

[3] Kausmeyer also received his regular paycheck amount due on November 15, and the paycheck amount for the November 1 pay period that had been withheld. (Kuohn Decl. ¶8.)

123; 134-137.)[4]  Kausmeyer retained the $19,079.52 payment until he tendered it to Talmer before filing his Counterclaim.  (Kausmeyer Dep. 137.)

The temporary removal of the funds was apparently due to a mistake by First Place Bank's HR department, who had erroneously thought that when Kausmeyer revoked the Separation Agreement, he had also revoked the Project Completion Agreement.  As a result, First Place Bank's HR personnel made a request to its payroll administrator to retract the $19,079.52 deposit from Kausmeyer's account.  Within a few days, First Place Bank discovered its error and the funds were restored to Kausmeyer.  (Kuohn Decl. ¶10.)  Kausmeyer acknowledged in his deposition that the $26,666 payment to him by First Place Bank was included in his compensation for 2013 as reported on his tax return.  (Kausmeyer Dep. 129-130.)

### G.   Kausmeyer's Initiation of Arbitration Proceedings and Partial Tender of the Release Proceeds to Talmer.

In August 2015, Kausmeyer initiated an Arbitration against Talmer (First Place Bank's successor in interest) for the alleged breach of the CICS Agreement.  In response to Kausmeyer's arbitration action, Talmer filed its Complaint in this action, seeking enforcement of the PCA's release terms.  Thereafter, Kausmeyer voluntarily dismissed his Arbitration.  (Declaration of Robert Ware ("Ware Decl."), Ex. 17 at ¶2.)  Prior to filing his Counterclaim, Kausmeyer informed Talmer through counsel that he intended to tender $19,079.52 to Talmer as his required "tender back" of the proceeds that he received for the PCA release.  Counsel for Talmer stated that this tender was insufficient, as it did not represent the full $26,666 amount paid to Kausmeyer, and instead amounted to only the net amount deposited into Kausmeyer's account after applicable tax withholdings.  Despite being advised of the insufficiency of the amount,

---

[4] Kausmeyer testified that he believed that the first deposit on November 15 was a payment for his PCA bonus, but when the exact same amount was re-deposited a few days later, he thought it was a reimbursement payment for outstanding expenses.  (Kausmeyer Dep. 113-114.)

Kausmeyer proceeded with a tender of only $19,079.52.  (Ware Decl. ¶3.)

## ARGUMENT

**I.    Talmer is Entitled to Summary Judgment on Count I of its Complaint and Each of Kausmeyer's Counterclaims Because the PCA Release is Valid and Enforceable.**

Count I of Talmer's complaint seeks a declaratory judgment that the PCA's release is valid and enforceable and bars any claim that Kausmeyer may have under his CICS Agreement. Kausmeyer's defenses to that claim, and the basis for all three of his counterclaims – common law fraud, violation of Ohio Rev. Code § 2307.70(A)(1), and rescission – is the allegation that First Place Bank defrauded Kausmeyer by tricking him into executing the PCA by stating it was for "regulatory purposes."  That premise is thoroughly disproven by the evidence and applicable law, and the Court may therefore enter summary judgment on Talmer's claim for declaratory judgment, as well as each of Kausmeyer's counterclaims.[5]

### A.    The Release is valid and enforceable on its face and bars Kausmeyer's claim under the CICS Agreement.

There can be no dispute that the PCA's release, on its face, bars Kausmeyer's claims under the CICS Agreement.  Pursuant to the release, Kausmeyer agreed to "irrevocably and unconditionally waive, release, and discharge FPB and its . . . successors . . . from liability for any and all claims or causes of action, both known and unknown, arising prior to you signing this agreement that you may have or claim to have against them . . ."  (Ex. 13 at 2.)  The release makes clear that its broad language includes Kausmeyer's claims under the CICS Agreement.  It

---

[5] Summary judgment is appropriately granted when the pleadings, the discovery and disclosure of materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial."  *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 403 (6th Cir. 1992); *see also Weaver v. Moamis*, 2016 U.S. Dist. LEXIS 43865, 6-8 (N.D. Ohio Mar. 31, 2016) (Pearson, J.).

states:  "Finally, you waive any rights you may have that are related to or arise under that Change in Control Severance Agreement between you and FPB dated effective as of June 13, 2011."  (Ex. 13 at 3.)  Therefore, on its face, the release is a valid and binding obligation on Kausmeyer and operates to bar any later-asserted claims that fall within its scope.  *See, e.g., Sequa Corp. v. Elyria Foundry Corp.*, No. 1:03cv2508, 2006 U.S. Dist. LEXIS 70817 at *22 (N.D. Ohio 2006); *Haller v. Borror Corp.*, 50 Ohio St. 3d 10, 13 (1990); *Task v. Nat'l City Bank*, No. 65617, 1994 Ohio App. LEXIS 437 at *13-14 (Ohio Ct. App. 1994); *Jacob v. Grant Life Choices Fitness Center*, No. 95APE12-1633, 1996 Ohio App. LEXIS 2313 at *9 (Ohio Ct. App. 1996).

The PCA signed by Kausmeyer contained a deadline for execution of October 17, 2013, after which it stated that First Place Bank's offer would be "null and void."  (Ex. 13 at 3.)  While Kausmeyer ultimately did not return First Place Bank's offices to execute the PCA until November 8, 2013, First Place Bank waived compliance with the deadline by executing the PCA and performing its obligations under the agreement (i.e., by paying Kausmeyer the $26,666 Project Completion Bonus).  Under Ohio law, an offeror is entitled to make an offer that states it must be accepted by the offeree within a certain period of time.    If the offeree accepts after the stated deadline, the offeror may waive the required compliance with the deadline and move forward with the transaction.  *Id.*  If the offeror does so, a valid contract is formed.  *See, e.g., Knight v. Hughes*, No. 86 AP-1106, 1987 Ohio App. LEXIS 8786, at *4-5 (Ohio Ct. App. 1987); *Ritchie v. Cordray*, 10 Ohio App. 3d 213, 215 (Ohio Ct. App. 1983).  That is exactly what happened here, and the stated deadline to accept the offer is of no legal consequence.

### B.    Kausmeyer's Defenses Fail as a Matter of Law.

Kausmeyer asserts four substantive affirmative defenses:  duress, estoppel, failure of

consideration and fraudulent inducement.  Kausmeyer cannot meet his burden of proof to establish the elements of those affirmative defenses.

### *(1)*     *Kausmeyer's Admissions Preclude any Claim of Duress.*

To avoid the PCA on the grounds of duress, Kausmeyer must demonstrate that he was subject to "a wrongful or unlawful act or threat" that deprived him of his "unfettered will." *Graves v. Mental Health Management, Inc.*, No. 59668, 1991 Ohio App. LEXIS 6094 at *5-6 (Ohio Ct. App. 1991), *quoting Blodgett v. Blodgett*, 49 Ohio St. 3d 243, 246, (Ohio 1990).  In *Blodgett*, the Ohio Supreme Court set forth three elements required to establish duress:  (1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party. Id.; *see also ODW Logistics, Inc. v. Karmaloop, Inc.*, No. 2:12cv00996, 2013 U.S. Dist. LEXIS 96309 at *8 (S.D. Ohio 2013).  In order to overturn a release based on a claim of duress, a party must prove coercision by clear and convincing evidence.  *See Casserlie v. Shell Oil Co.*, 2007-Ohio-2633, P102 (Ohio Ct. App. 2007), *citing DiPietro v. DiPietro*, 10 Ohio App. 3d 44, 46, (Ohio Ct. App. 1983).

Kausmeyer claims that First Place Bank's withholding of his November 1, 2013 paycheck amounts to duress (*see* Ctrclm. Dkt. 13 at ¶¶14, 16), but this action cannot establish duress under Ohio law for several independent reasons.  First, Kausmeyer had already indicated his intention to execute the Project Completion Agreement *before* his paycheck was withheld. Kausmeyer testified that he was "confused" when bank withheld his paycheck because he had previously committed to sign the documents.  (Kausmeyer Dep. 96.)  Indeed, Kausmeyer chastised Kuohn because she had not believed that he would "***keep his word*** and sign the documents."  (Id., Ex. 12 at 6.)  Because, in his own words, Kausmeyer had already committed to sign the documents before his paycheck was withheld, he cannot establish a duress defense.

12

Second, Kausmeyer's lengthy negotiations of the agreements and reliance on legal counsel preclude a finding of duress. Where a party is represented by counsel and negotiates the terms of an agreement, economic duress cannot exist as a matter of law. *See ODW Logistics, Inc., supra* at *11-12 (finding no duress where the defendant was "a sophisticated party represented by legal counsel"); *Casserlie, supra* at P105 ("Evidence that a dealer consulted an attorney before signing the document is one factor indicating the party did not suffer duress"). *See also Sheet Metal Workers Natl. Pension Fund* v. *Bryden House Ltd.*, 130 Ohio App. 3d 132; 141 (Ohio Ct. App. 1998); *Medina Supply Co. v. Corrado*, 116 Ohio App. 3d 847, 852 (Ohio Ct. App. 1996).

Third, in withholding Kausmeyer's paycheck, First Place Bank was initiating the termination process, an action that it was entirely permitted to do. Kausmeyer had been told at the outset that he could either be immediately terminated or enter into a negotiated resolution. When he delayed in finalizing an agreement, the bank reverted to what it had told him would occur – the termination of his employment with the bank. "Generally, a threat to do what one is legally entitled to does not constitute duress." *Casserlie*, *supra* at P76, *citing Maust v. Bank One Columbus. N.A.*, 83 Ohio App. 3d 103, 108 (Ohio Ct. App. 1992). *See also Medina Supply Co., supra* at 852 ("It was not duress, therefore, for Medina Supply to forbear filing the lien in order to procure defendants' signatures on the cognovit note").

Fourth, the withholding of a single paycheck is insufficient to establish duress as a matter of law. Importantly, the doctrine of duress requires that, as a result of the perpetrator's actions, the victim has no viable alternative but to enter the agreement. In the context of a release, this requires more than concern over the potential consequences of not entering the release. "Almost every settlement agreement . . . contains some modicum of coercion or duress." *Casserlie,* supra

13

at P102, *quoting* B*lodgett*, *supra* at 246-247.   Kausmeyer earned $160,000 per year. (Kausmeyer Dep. 15.)  Even if the withholding of his paycheck was wrongful (which it was not), and even if it put some pressure on Kausmeyer to sign the documents, it is not the type of extreme coercion contemplated by the law of duress.

### (2)    *Kausmeyer's Admissions Preclude any Claim of Fraudulent Inducement.*

To establish his affirmative defense of fraud in the inducement, Kausmeyer needs to prove (1) a representation or concealment of fact, (2) material to the transaction, (3) was made with knowledge of its falsity, (4) with the intent of misleading another into relying upon the false statement, (5) justifiable reliance on the representation, and (6) resulting injury proximately caused by such reliance.  *Exal Corp. v. Roeslein & Assocs.*, No. 4:12cv1830, 2015 U.S. Dist. LEXIS 107951 at *32-33 (N.D. Ohio 2015) (Pearson, J.), *citing Volbers-Klarich v. Middletown Mgt., Inc.*, 125 Ohio St. 3d 494 (2010); *Gentile v. Ristas*, 160 Ohio App. 3d 765 (Ohio Ct. App. 2005).  Even crediting Kausmeyer's testimony that the bank representative made a false statement to him during the November 8 meeting that the Project Completion Agreement was needed for "regulatory purposes," the evidence does not establish the fraud elements of:  (1) justifiable reliance, (2) materiality, and (3) a false statement of fact made with intent to deceive.

**_Justifiable Reliance_**:  Kausmeyer cannot in good faith contend that he relied on statements made at the November 8 meeting as a basis for executing the Project Completion Agreement.  First, he had decided ***before arriving at the meeting*** to execute the documents.  This fact is not disputable based on Kausmeyer's numerous statements to that effect in emails prior to the meeting.  Indeed, in an email that he sent shortly after midnight on November 7, Kausmeyer requested that the bank have "two hard copies of the documents" printed and "ready to sign" when he arrived at the bank the afternoon of November 8.  Where the circumstances make clear

14

that a party did not rely on the false statements, a claim for fraud must fail.

Second, Kausmeyer negotiated the documents for more than two months and was represented by counsel in doing so.  Given these facts, Kausmeyer cannot be said to have justifiably relied on a statement by the bank – made, after weeks of negotiation, only moments before the document was to be signed – that the PCA was for "regulatory purposes."  *See Kallergis v. Quality Mold, Inc.*, 2007-Ohio-6047, P20 (Ohio Ct. App. 2007); *Covey v. Natural Foods, Inc.*, 2004-Ohio-1336, P29 (Ohio Ct. App. 2004).

Third, the context and nature of the alleged statement cannot support a finding of justifiable reliance.  It is implausible that Kausmeyer – an experienced bank executive with degrees in accounting and legal studies, who was responsible for regulatory compliance at First Place Bank – would execute an agreement based entirely on a representation that the document was for "regulatory purposes."  Given Kausmeyer's experience and background, as well as the fact that he had participated in lengthy negotiations and knew that the PCA was part of his termination package from the bank (and not a mere regulatory formality), Kausmeyer's reliance cannot be found to be reasonable.  See *Thompson v. Transam Trucking, Inc.*, 2:08cv927, 2011 U.S. Dist. LEXIS 61176 at *19-*20 (S.D. Ohio 2011) (holding that the question of reasonable reliance must be based on the "qualities and characteristics" of the person alleging fraud and entering summary judgment where the plaintiff had prior experience relevant to the transaction and was not the type of "simple-minded or unwary" person that the law is intended to protect).  *See also Lapos Constr. Co. v. Leslie*, 2006-Ohio-5812 at P21-P22 (Ohio Ct. App. 2006); *Amerifirst Savings Bank of Xenia, Ohio v. Krug*, 136 Ohio App. 3d 468, 496 (Ohio Ct. App. 1999); *Crown Prop. Dev. Inc. v. Omega Oil Co.*, 113 Ohio App. 3d 647, 657 (Ohio Ct. App. 1996).

_**Materiality:**_  In addition to not satisfying the "reliance" element of fraudulent inducement, Kausmeyer's defense fails because the alleged representation was not "material." "A representation is material if it is essential to contract formation."  *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, 606 F. Supp. 2d 722, 741-742 (S.D. Ohio 2009), *citing Burke Lakefront Services v. Lemieux*, 2002-Ohio-4060 at P40 (Ohio Ct. App. 2002).  Further, "a representation must be as to a fact material in the transaction, not mere opinion."  *Id., citing Aetna Insurance Co. v. Reed*, 33 Ohio St. 283 (1877); *Citizens Banking & Savings Co. v. Spitzer, Rorick & Co.*, 65 Ohio App. 309, 318, (Ohio Ct. App. 1938).  The alleged statement that the PCA was for "regulatory purposes" concerned a collateral issue that was essentially a matter of legal opinion and not material to the transaction, which involved the terms of Kausmeyer's continued employment with First Place Bank.

_**False Statement of Fact Made with Intent to Deceive:**_  The alleged statement also fails to satisfy the basic requirement that it be a false statement of fact that is made with intent to deceive.  As noted above, the alleged statement that the PCA was needed for "regulatory purposes" was a statement of a legal opinion, which cannot be the basis of a fraud claim under Ohio law.  *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, 606 F. Supp. 2d 722, 741-742 (S.D. Ohio 2009), *citing Aetna Insurance Co. v. Reed*, 33 Ohio St. 283 (1877).  *See also Lynch v. Dial Finance Co. of Ohio No. 1, Inc.*, 101 Ohio App.3d 742, 750 (Ohio Ct. App. 1995).

Further, Kausmeyer can present no evidence that First Place Bank had any intention to deceive him.  The notion that First Place Bank's alleged statement that the PCA was for "regulatory purposes" was intended to trick Kausmeyer into signing a document that he had already negotiated, agreed to, and asked to be printed for execution, is simply not plausible. Absent evidence of fraudulent intent, the Court may enter summary judgment against the

16

claimant. *See Captiva, Inc. v. Viz Communications, Inc.*, 85 Fed. Appx. 501, 502, 507 (6th Cir. 2004); *Micrel, Inc. v. TRW, Inc.*, No. 1:02cv2539, 2005 U.S. Dist. LEXIS 9430 at *35-38 (N.D. Ohio 2005); *Burnside v. Washtenaw Mortg. Co.*, No. C-1-01-359, 2002 U.S. Dist. LEXIS 13325 at *18 (S.D. Ohio 2002); *Wall v. Firelands Radiology, Inc.*, 106 Ohio App. 3d 313, 325-26 (Ohio Ct. App. 1995).

### (3) *Kausmeyer's Admissions Preclude Any Claim of Estoppel.*

Because Kausmeyer cannot establish the reliance and materiality prongs of his defense of fraudulent inducement, his claim for estoppel fails on the same bases.[6] *See Goodyear Tire & Rubber Co. v. Aetna Casualty & Sur. Co.*, No. 16993, 1995 Ohio App. LEXIS 2975 at *31-*32 (Ohio Ct. App. 1995) ("Because we have decided that Goodyear could not establish justifiable reliance in its fraud claim, it follows that it cannot establish justifiable reliance in its equitable estoppel claim").

### (4) *Kausmeyer Received Full Consideration for the Release.*

Kausmeyer's defense of "failure of consideration" is not supported by the evidence. "Failure of consideration exists when one who has promised to give some performance fails without his or her fault to receive in some material respect the agreed quid-pro-quo for that performance." *FDIC v. Commonwealth Land Title Ins. Co.*, 902 F. Supp. 2d 1048, 1064 (N.D. Ohio 2012) (Pearson, J.), *citing Langley v. FDIC*, 484 U.S. 86, 108 S. Ct. 396, 98 L. Ed. 2d 340 (1987). "[T]he defendant has the burden of proof when failure of consideration is asserted as a defense." *Id., citing* 3 Williston on Contracts § 7:11 (4th ed.).

There is no dispute that Kausmeyer received the $26,666 bonus payment due under the

---

[6] "Estoppel arises when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts." *State ex rel. Madden v. Windham Exempted Village School Dist. Bd. of Education*, 42 Ohio St. 3d 86, 90 (Ohio 1989).

PCA.  The $19,079.52 deposited into Kausmeyer's account reflected the net funds payable to Kausmeyer after applicable tax withholdings, in accordance with the terms of the PCA.  (Ex. 13 at 2; Kuohn Decl. ¶9.)  Kausmeyer's alleged belief that the payment was intended as reimbursement of his outstanding expenses does not alter the fact that he received the payment, and First Place Bank therefore performed its obligation under the PCA.

### C.    Kausmeyer's Failure to Tender Back the Full Amount of the Consideration for the Release Bars His Defenses and Renders the Release Enforceable.

Ohio law is crystal clear that a party may not attack the validity of a release for fraud in the inducement unless he has previously tendered back the consideration that he received in making the release.  *Haller v. Borror Corporation*, 50 Ohio St. 3d 10, syl. ¶2 (1990).  *See also Shallenberger v. Motorists Mut. Ins. Co.*, 167 Ohio St. 494 (Ohio 1958); *Picklesimer v. Baltimore & Ohio R. Co.*, 151 Ohio St. 1 (Ohio 1949).  Ohio law does not permit the partial or conditional tender of consideration to satisfy the tender back rule.  *See Miller v. Bieghler*, 123 Ohio St. 227, syl. ¶3 (Ohio 1931) (party seeking rescission "must first place the other *in statu quo*, by returning ***all*** money, property, or other benefits received by him under the contract . . .") (emphasis added).  *See also Lewis v. Mathes*, 161 Ohio App. 3d 1, 11-12 (Ohio Ct. App. 2005); *Maust v. Bank One Columbus, N.A.*, 83 Ohio App. 3d 103, 108 (Ohio Ct. App. 1992).  Kausmeyer failed to comply with the tender back rule when he tendered only the $19,079.52 that was deposited into his checking account by First Place Bank.  Therefore, Kausmeyer's claim of fraudulent inducement fails and the relase must be enforced.

## II.    Kausmeyer's Counterclaims for Fraud and Breach of Ohio Rev. Code § 2307.70(A)(1) Fail for Independent Reasons.

### A.    Kausmeyer Cannot Establish Injury Proximately Caused by the Fraud.

As an independent basis for summary judgment, Counts One and Two of Kausmeyer's Counterclaim both fail because Kausmeyer cannot establish a cognizable injury, which is a

required element of both claims.  Kausmeyer claims that he has suffered damages resulting from First Place Bank's alleged fraud "by the Bank's failure to pay him the amounts owed under his 2011 CICS Agreement."  (Def. Responses to Interrogatories and Requests for Admissions, Ex. 18 at 7.)  In other words, Kausmeyer claims as damages the amount that he would be owed *if he could establish a viable claim under the CICS Agreement*, which he has not done.  Kausmeyer voluntarily dismissed his Arbitration in which he had alleged a claim for breach of the CICS Agreement, and he did not thereafter assert that claim as a counterclaim in this case.

Because Kausmeyer's claim for breach of the CICS Agreement has not been impaired, Kausmeyer's theory of damages is logically self-defeating.  If he is correct that First Place Bank committed fraud in obtaining his release in the PCA, then the release would be unenforceable and subject to rescission, which means that Kausmeyer would be entitled to pursue his claim for breach of the CICS Agreement.  Thus, Kausmeyer has not suffered injury, as he will be fully entitled to pursue his CICS Agreement claim in the event that he succeeds in the present case.

Moreover, even if Kausmeyer had suffered an actual injury, Kausmeyer's damages theory could not satisfy the element of proximate causation.  The PCA release, if enforced, would clearly bar Kausmeyer from asserting a claim under the CICS Agreement, but the release is not the proximate cause of Kausmeyer's not receiving a payment under the CICS Agreement.  Rather, Kausmeyer has not been paid under the CICS Agreement because he has not established a right to such a payment.  Talmer (and, previously, First Place Bank) has made clear its position that the CICS Agreement was terminated, and Kausmeyer has not obtained a court judgment to the contrary.  Therefore, Kausmeyer cannot establish an injury proximately caused by his execution of the release.  See *Infocision Mgmt. Corp. v. Found. for Moral Law, Inc.*, No. 5:08cv13422009, U.S. Dist. LEXIS 23640 at *14-15 (N.D. Ohio 2009) (finding no proximate

19

causation where the funds at issue remained available to plaintiff pending outcome of litigation).

**B.    There is No Civil Cause of Action Created by Section 2307.60(A).**

In Count Two of his Counterclaim, Kausmeyer appears to assert a claim under Section 2307.60(A)[7], however that statute does not create a cause of action under Ohio law.  *See Cobra Pipeline Co. v. Gas Natural, Inc.*, 132 F. Supp. 3d 945, 2015 U.S. Dist. LEXIS 124236 at *19-*21 (N.D. Ohio 2015); *Sollenberger v. Sollenberger*, No. 3:15cv00213, 2016 U.S. Dist. LEXIS 39528 at *58-59 (S.D. Ohio 2016).  As Kausmeyer has not identified any statute that creates a separate civil cause of action for the crime he has alleged –  namely, "securing writings by deception" under Ohio Rev. Code § 2913.43 – his claim under Section 2307.60(A) fails as a matter of law.  *See Cobra Pipeline* at *19-20.  The Court may enter summary judgment on this issue independent of the other grounds raised in this motion.

## CONCLUSION

For the foregoing reasons, Talmer respectfully requests that the Court grant summary judgment in its favor on Count I of its Complaint and against Kausmeyer as to each of his Counterclaims.

Respectfully submitted,

/s/ Robert F. Ware
Robert F. Ware (OH 0055515)
Jennifer S. Roach (OH 0074143)
Rob.Ware@ThompsonHine.com
THOMPSON HINE LLP
3900 Key Center, 127 Public Square
Cleveland, Ohio 44114
Telephone:  (216) 566-5500

Attorneys for Plaintiff Talmer Bank and Trust

---

[7] The heading of Kausmeyer's Counterclaim refers to Ohio Rev. Code § 2307.70(A)(1), which relates to recover of damages for vandalism, desecration or ethnic intimidation, and clearly does not apply to the present facts. Kausmeyer's allegations, however, refer to Ohio Rev. Code § 2307.60(A).

## **CERTIFICATE OF SERVICE**

A copy of the foregoing was filed electronically with the Court this 11th day of May, 2016.  Service will be made by the Court's electronic notification system, and all parties may access this filing through the Court's system.

/s/ Robert F. Ware
*Attorney for Plaintiff Talmer*
*Bank and Trust*