PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHEMICAL BANK, | ) | |
| | ) | CASE NO.  4:15CV1850 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| GARY KAUSMEYER, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | [Resolving ECF No. 45] |

Pending is Plaintiff Chemical Bank's Motion for Summary Judgment (ECF No. 45).

Plaintiff moves the Court to enter summary judgment in its favor as to Count I of the Complaint

(ECF No. 1) and as to each of the three counts set forth in the Counterclaim (ECF No. 13).  The

Court has been advised, having reviewed the record, the parties' briefs, and the applicable law.

For the reasons set forth below, Plaintiff's motion is granted in part and denied in part.[1]

## I.  Background

### A.

As a preliminary matter, the Court notes that the Case Management Plan (ECF No. 15),

entered on November 9, 2015, provides, in pertinent part:

> Lead counsel of record shall confer with one another in person in order to prepare
> written stipulations as to all uncontested facts to be presented by the dispositive
> motion.  The stipulations shall be filed with the Court on or before May 11, 2016.

---

[1]  On November 18, 2016, the Court announced its decision during the Final
Pretrial Conference.

(4:15CV1850)

ECF No. 15 at PageID #: 100, ¶ 13.  Rather than file stipulations, Plaintiff declares "lead counsel

for the parties conferred regarding proposed stipulations of fact but were unable to agree on

written stipulations."  Motion (ECF No. 45) at PageID #: 281.[2]

**B.**

      In early 2011, Defendant Gary Kausmeyer was an experienced risk officer with a secure

position at BankAtlantic in Fort Lauderdale, Florida.  Declaration of Defendant (ECF No. 46-1)

at PageID #: 590, ¶¶ 2 and 4.  Therefore, when First Place Bank ("FPB") approached Defendant

in the spring of that year about filling its vacant position of Chief Risk Officer, Defendant was

hesitant.  Defendant became even more reluctant when he discovered that FPB was experiencing

significant regulatory problems, as well as the need to restate financial statements for multiple

years.  ECF No. 46-1 at PageID #: 590, ¶ 4.  In addition to offering Defendant a significant

increase in his annual salary, the Bank offered him a two-year Change in Control Severance

Agreement, approved by FPB's primary regulator (the Office of Thrift Supervision), in the hope

of alleviating the considerable concerns Kausmeyer had in leaving BankAtlantic.  ECF No. 46-1

at PageID #: 591, ¶¶ 5-6.  The Bank also offered to reimburse Defendant for expenses for

temporary housing and travel expenses, and move-related and housing-related costs incurred

within two years of his start date.  ECF No. 46-1 at PageID #: 592, ¶ 16; Deposition of Defendant

(ECF No. 45-1) at PageID #: 317-18.

---

    [2]  The parties, however, have filed Stipulations of Uncontested Fact (ECF No. 57)
for purposes of trial in compliance with the Civil Trial Order (ECF No. 36).

(4:15CV1850)

Defendant was hired as Executive Vice President and Chief Risk Officer at FPB in June

2011.  On June 13, 2011, Defendant and FPB executed a Change in Control Severance

Agreement (the "CICS Agreement") (ECF No. 46-2).  The CICS Agreement provides, in

pertinent part:

> 3.     **Change in Control followed by Termination of Employment.**  If there
> is a Change in Control of the Bank or the Holding Company during the Term of
> this Agreement, and if within two years following the effective date of the Change
> in Control, the Bank terminates Executive's employment without Cause or
> *Executive terminates the employment for Good Reason*, the following shall apply:
>
> (A)     **Lump Sum Payment.**  The Bank shall pay Executive . . . a lump sum
> equal to two times Executive's Average Annual Compensation for the five most
> recent taxable years that Executive has been employed by the Bank or such lesser
> number of years in the event that Executive shall have been employed by the Bank
> for less than five years. . . .

ECF No. 46-2 at PageID #: 596 (emphasis added).  The CICS Agreement also provides that any

dispute arising under it was required to be adjudicated in an arbitration.  ECF No. 46-2 at PageID

#: 600, § 15.

On January 1, 2013, FPB was acquired by Talmer Bancorp, Inc., a transaction that

qualifies as a "Change in Control" under the CICS Agreement.  On November 10, 2016, as a

result of the merger of Chemical Financial Corporation and Talmer Bancorp, Inc., Talmer Bank

and Trust was merged into Chemical Bank.  As such, Chemical Bank has succeeded to all right,

title and interest of Talmer Bank and Trust pertaining to the claims and counterclaims asserted in

this action.  *See* Agreement of Consolidation (ECF No. 63-1).  Therefore, on November 30,

2016, Chemical Bank was substituted for Talmer Bank and Trust as party plaintiff to accurately

reflect the real party in interest in this case.  Order (ECF No. 67).

3

(4:15CV1850)

In late March 2013, Craig Carr, then the General Counsel of FPB, presented Defendant

with a memorandum with the subject line:  "Notice re/ Change in Control Severance Agreement"

(ECF No. 46-4).  The memorandum included a section at the end entitled "Receipt and

Acknowledgment," which provides, in pertinent part:

> I received from First Place Bank the above Notice that the Change in Control
> Severance Agreement with First Place Bank dated as of June 13, 2011, is no
> longer in effect.  I understand and agree that the Agreement is terminated and that
> I have no claim to any benefit under the Agreement.

Defendant declined to sign the "Receipt and Acknowledgment" because he did not agree that the

CICS Agreement had been terminated.  ECF No. 46-1 at PageID #: 591, ¶ 10.

In April 2013, Defendant submitted an expense reimbursement form with expenses

totaling $16,362.66 to Kim Wadman, assistant to FPB's Chief Executive Officer, Tom Shafer.

ECF No. 45-1 at PageID #: 321-23; ECF No. 46-1 at PageID #: 592, ¶ 17.  Defendant had not

been reimbursed for these expenses as of November 8, 2013.  ECF No. 46-1 at PageID #: 593, ¶

18.

In 2013, Defendant's position was gradually phased out in favor of Talmer employees.

ECF No. 46-1 at PageID #: 591, ¶ 11.  On July 12, 2013, Defendant submitted a document to

FPB's CEO, entitled "Notice of Condition Leading to Termination for Good Reason" based on

the CICS Agreement.  ECF No. 45-1 at PageID #: 344-50.[3]  The next work day, Defendant was

"walked out" of FPB and his employment was suspended.  ECF No. 45-1 at PageID #: 344; ECF

No. 46-1 at PageID #: 591, ¶ 13.

---

[3]  Defendant was represented by legal counsel, Neil Klingshirn, in connection with
the preparation and submission of the Claim to FPB.  ECF No. 45-1 at PageID #: 350.

4

(4:15CV1850)

Defendant negotiated the terms of a release included in a Project Completion Agreement for more than eight weeks (including numerous emails and exchanges of drafts) while represented by counsel.  On November 8, 2013, Defendant executed the Project Completion Agreement ("PCA") (ECF No. 45-13) and Separation Agreement and General Release ("Separation Agreement") (ECF No. 45-14).  The PCA provides that the Bank agrees to pay Defendant a $26,666 Project Completion Bonus on November 15, 2013 if he stays employed at the Bank through November 8, 2013.  ECF No. 45-13 at PageID #: 538.  Both the PCA and Separation Agreement include statements in which Defendant waives his rights under his CICS Agreement.  ECF No. 45-13 at PageID #: 540; ECF No. 45-14 at PageID #: 543, ¶ 3.A.  The Separation Agreement also provides:

> 12.    **Time to Revoke Agreement**.  You have seven (7) days from the date you sign this Agreement and deliver it to the Company to reconsider and revoke it.  If the seventh day falls on a weekend or holiday, your revocation must be delivered to the Company by the next business day.  After that date, you may not revoke this Agreement and it shall be fully effective and enforceable.  Any such revocation must be in writing and delivered to the Company as provided in the "Notices" section of this Agreement.

ECF No. 45-14 at PageID #: 545.

On November 15, 2013, Defendant rescinded the Separation Agreement (ECF No. 45-14) because he had decided that he did not want to waive the rights he had under the CICS Agreement.  ECF No. 46-1 at PageID #: 594, ¶ 23.  On the same day, Defendant received three separate payments from FPB by way of direct deposit into his bank account:  (1) his regular paycheck amount due on November 15, (2) the paycheck amount that had been withheld for the

5

(4:15CV1850)

November 1 pay period,[4] and (3) $19,079.52.  According to Plaintiff, it deposited the Project

Completion Bonus amount of $26,666, which after applicable tax withholdings resulted in a net

deposit into Defendant's bank account of $19,079.52.  ECF No. 45-3 at PageID #: 475, ¶ 8.

Defendant believed that the $19,079.52 was reimbursement for expenses owed to him by the

Bank.  ECF No. 46-1 at PageID #: 593-94, ¶¶ 21-22.

On or about August 12, 2015, Defendant sent a Demand for Arbitration to the American

Arbitration Association (the "AAA"), purporting to assert a claim for breach of the CICS

Agreement (the "Arbitration Action").  Complaint (ECF No. 1) at PageID #: 7, ¶ 30; Answer

(ECF No. 13) at PageID #: 77, ¶ 30.  As Defendant's annual salary was $160,000 in 2013, he

would be entitled to a lump sum payment of $320,000 from the Bank under the CICS

Agreement.  ECF No. 46-1 at PageID #: 591, ¶ 9.  Defendant voluntarily dismissed his

Arbitration after Plaintiff filed the Complaint (ECF No. 1) in the case at bar.  Declaration of

Robert Ware (ECF No. 45-17) at PageID #: 556, ¶ 2.

On September 10, 2015, Plaintiff filed a Complaint (ECF No. 1) against Defendant that

asserts two claims for relief.  Count I is for declaratory judgment.  Count II is for breach of

contract.  On October 30, 2015, Defendant filed an Answer and Counterclaim (ECF No. 13) that

asserts four affirmative defenses, *i.e.*, duress, estoppel, failure of consideration, and fraudulent

inducement.  *See* ECF No. 13 at PageID #: 79, ¶¶ 59-62.  The Counterclaim asserts three claims

---

[4]  Defendant's November 1, 2013 paycheck was withheld as part of the
termination process because he did not finalize the PCA (ECF No. 45-13) and Separation
Agreement (ECF No. 45-14) by October 29, 2013.  Declaration of Sandy Kuohn (ECF
No. 45-3) at PageID #: 474, ¶ 6.

(4:15CV1850)

for relief.  Count One is for common law fraud.  Count Two is for breach of Ohio Rev. Code §
2307.60(A)(1) for the criminal offense of securing writings by deception.[5]  Count Three is for
rescission of the PCA.  (Defendant, however, has not asserted a claim for breach of the CICS
Agreement as a counterclaim.)

Also on or about September 10, 2015, Plaintiff informed Defendant that it was the Bank's
belief that the $19,079.52 it had paid to Kausmeyer in November 2013 was the bonus called for
under the PCA, and was not reimbursement for expenses.  According to Defendant, this was the
first notice Kausmeyer had that the $19,079.52 may not have been expense reimbursement.  ECF
No. 46-1 at PageID #: 594, ¶ 22.

In October 2015, Defendant notified Plaintiff that he wished to rescind the PCA.  He also
informed Plaintiff that he disputed that he had ever received any consideration under the PCA.
Letter, dated October 21, 2015, from Attorney Kramer to Counsel for Plaintiff (ECF No. 46-8).
Later that month and prior to filing the Counterclaim (ECF No. 13), Defendant provided counsel
for Plaintiff with a check in the amount of $19,079.52.  ECF No. 45-17 at PageID #: 556-57, ¶ 3.

## II.  Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and
disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any
material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a);
*see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).  The moving party is not required

---

[5]  The heading of this counterclaim refers to Ohio Rev. Code § 2307.70(A)(1).
This is a typographical error.

7

(4:15CV1850)

to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). The non-moving party must, to defeat the motion, "show that there is doubt as to [whether] the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact. *Id.* at 248. The existence of some mere factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A fact is "material" only if its resolution

8

(4:15CV1850)

will affect the outcome of the lawsuit.  In determining whether a factual issue is "genuine," the court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict.  *Id.*  Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact.  *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990).  The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily will not be sufficient to defeat a motion for summary judgment.  *Id.*

## III.  Analysis

### A.  Change in Control Severance Agreement (the "CICS Agreement") (ECF No. 46-2)[6]

It is Plaintiff's position that, because the conditions necessary for extension of Defendant's CICS Agreement did not occur, the agreement expired on June 30, 2012.  It is Defendant's position that the CICS Agreement did not expire and is a valid and enforceable agreement.  The CISC Agreement requires the Board of Directors of the Bank to notify

---

[6]  In August 2014, Plaintiff was ordered by an American Arbitration Association arbitrator to pay the full amount owed to William Chernock, another Bank employee, under his CICS Agreement.  Affidavit of William Chernock (ECF No. 46-5) at PageID #: 608, ¶ 5.  Mr. Chernock was represented by Joshua R. Cohen and Ellen M. Kramer – the same attorneys that represent Defendant in the case at bar.  *See* Arbitration Award (ECF No. 46-5, PageID #: 619-28) at PageID #: 619.  In September 2014, Plaintiff settled with Jeffrey Miller, a third Bank employee, effectively paying him "almost 90% of what [he] had requested in [his] arbitration demand in exchange for dismissing [his] claims under [his] CICS Agreement."  Affidavit of Jeffrey Miller (ECF No. 46-6) at PageID #: 629, ¶ 6; Settlement Agreement (ECF No. 46-7).  The Court was advised at the Final Pretrial Conference that Attorneys Cohen and Kramer also represented Mr. Miller.

(4:15CV1850)

Defendant "of any non-extension within thirty days."  ECF No. 46-2 at PageID #: 595, § 2.  The

Board of Directors of FPB never notified Defendant of any non-extension of his CICS

Agreement.  ECF No. 46-1 at PageID #: 591, ¶ 7.  In fact, in July 2011, the Bank extended the

term of Defendant's CICS Agreement through June 30, 2013.  Minutes of Board Meeting (ECF

No. 46-3) at PageID #: 603-604 and 606.

### B.  Project Completion Agreement ("PCA") (ECF No. 45-13)

With regard to Count I of the Complaint (ECF No. 1), Plaintiff specifically seeks a

declaration (1) that the PCA entered into by FPB and Defendant is a valid and enforceable

contract, and (2) that the terms of the PCA bar any claims purportedly arising under the CICS

Agreement previously entered into by Defendant and FPB.

Ohio's tender-back rule requires that a party must tender back the consideration received

for a release before that party may "attack the validity" of the release.  *See, e.g.*, *Berry v. Javitch,*

*Block & Rathbone, L.L.P.*, 127 Ohio St.3d 480, 490, ¶ 47 (2010); *Talmer Bank and Trust v.*

*Malek*, 651 Fed.Appx. 438, 442-43 (6th Cir. 2016) (employee's failure to timely tender back

consideration received under release barred counterclaims relating to execution of release,

including that it was induced by fraud).[7]  Defendant, however, disputes that he has ever received

any consideration under the PCA.  ECF No. 46-8.  According to Plaintiff, it deposited the Project

Completion Bonus amount of $26,666, which after applicable tax withholdings resulted in a net

deposit into Defendant's bank account of $19,079.52.  ECF No. 45-3 at PageID #: 475, ¶ 8.

---

[7]  Mr. Malek was represented by Ellen M. Kramer – one of the same attorneys that
represents Defendant in the case at bar.

10

(4:15CV1850)

Defendant believes, however, that the $19,079.52 was reimbursement for expenses owed to him by the Bank. ECF No. 46-1 at PageID #: 594, ¶ 22. The Court finds that this is a material issue of fact to be decided by the fact finder.

Defendant argues that there is also a dispute of material fact as to whether the PCA is an enforceable agreement. Memorandum in Opposition (ECF No. 46) at PageID #: 577-78. According to Defendant, the PCA is not a contract because there was no mutual assent to its terms – no meeting of the minds. As discussed in Section III.D. below, Defendant did not believe the PCA to be a valid and enforceable agreement when he signed it on November 8, 2013. Due to the agreement's express language stating it was null and void if not signed by October 17, 2013, Defendant believed he was signing a null and void document. ECF No. 46-1 at PageID #: 593, ¶ 19. Defendant also believed the Bank's representation on November 8, 2013 that his signature on the PCA was only needed for regulatory purposes.

**C.      Duress and Estoppel**

Plaintiff's memorandum in support addresses each of the four affirmative defenses asserted by Defendant, *i.e.*, duress, estoppel, failure of consideration, and fraudulent inducement. *See* ECF No. 13 at PageID #: 79, ¶¶ 59-62. In his Memorandum in Opposition (ECF No. 46), however, Defendant discusses only failure of consideration and fraudulent inducement and has thereby abandoned his other defenses. Defendant offers no opposition to Plaintiff's arguments regarding the affirmative defenses of duress and estoppel.[8] Because Defendant failed to meet his

---

[8] The pre-filing written exchange required by ¶ 13 of the Case Management Plan (ECF No. 15 at PageID #: 100) should have obviated the need for the Court's attention to

(continued...)

(4:15CV1850)

burden in opposing summary judgment, Defendant has abandoned these two affirmative defenses

and waived any argument concerning them.  *See Regency Realty Group, Inc. v. Michaels Stores,*

*Inc.*, No. 12-10594, 2013 WL 3936399, at *10 (E.D. Mich. July 30, 2013) (citing *L.W. Matteson,*

*Inc. v. Sevenson Envtl. Servs., Inc.*, 831 F. Supp.2d 608, 618 (W.D.N.Y.2011) (contractor

abandoned two affirmative defenses by failing to challenge subcontractor's summary judgment

motion as it applied to those defenses)).  Therefore, Plaintiff's Motion for Summary Judgment

(ECF No. 45) with respect to the substantive affirmative defenses of duress and estoppel is

granted for the reasons articulated by Plaintiff.  *See* Memorandum in Support (ECF No. 45) at

PageID #: 293-95; 298-99.

   **D.    Fraudulent Inducement**

   Assuming *arguendo* that the PCA is determined to be a contract, Defendant argues that it

cannot be enforced because he was fraudulently induced to sign it.  ECF No. 46 at PageID #:

578-85.  A party claiming fraudulent inducement to enter into a contract

> must adduce evidence of (1) a false representation concerning a fact or, in the face
> of a duty to disclose, concealment of a fact, material to the transaction; (2)
> knowledge of the falsity of the representation or utter disregard for its
> truthfulness; (3) an intent to induce reliance on the representation; (4) justifiable
> reliance upon the representation under circumstances manifesting a right to rely;
> and (5) injury proximately caused by the reliance.

*McCarthy v. Ameritech Pub., Inc.*, 763 F.3d 469, 478 (6th Cir. 2014) (quoting *Metro. Life Ins.*

*Co. v. Triskett Ill., Inc.*, 97 Ohio App.3d 228, 235 (1994)).  "The question of justifiable reliance

is one of fact and requires an inquiry into the relationship between the parties."  *Crown Property*

---

   [8](...continued)
be drawn to unopposed arguments.

12

(4:15CV1850)

*Dev., Inc. v. Omega Oil Co.*, 113 Ohio App.3d 647, 657 (1996). "Reliance is justifiable if the representation does not appear unreasonable on its face and if there is no apparent reason to doubt the veracity of the representation under the circumstances." *Thompson v. TransAm Trucking, Inc.*, No. 2:08-cv-927, 2011 WL 2293281, at *7 (S.D. Ohio June 8, 2011) (citing *Lepera v. Fuson*, 83 Ohio App.3d 17, 26 (1992)).

The PCA, which is structured as an offer letter, is dated October 15, 2013. ECF No. 45-13 at PageID #: 538. It states: "This agreement must be signed by you and returned to FPB by no later than 10:00 a.m. EST on Thursday, October 17, 2013, or it will automatically be rescinded and thus be null and void." ECF No. 45-13 at PageID #: 540 (emphasis in original). It is undisputed that Defendant signed the PCA over three weeks later – on November 8, 2013.

Defendant testified at his deposition that prior to signing the PCA, he noted to the FPB employee who had presented him with the PCA, David J. Wolfe, Jr., Esq., that the PCA was out of date and, therefore, was null and void. In response, Defendant was told by Attorney Wolfe that, despite the language, it was not necessary to update the PCA because his signature was only needed "for regulatory purposes." ECF No. 45-1 at PageID #: 405-409. Attorney Wolfe, however, testified to the contrary:

> Q.     You informed Mr. Kausmeyer on November 8, during that meeting that his signature on this agreement was needed in order to comply with some regulatory requests.
> A.     No, I did not.

Deposition of David J. Wolfe, Jr. (ECF No. 55) at PageID #: 1040. In addition, Defendant never believed that the PCA was a valid and enforceable agreement, due to the language above his

13

(4:15CV1850)

signature stating it was null and void since it was not signed by October 17, 2013.  ECF No. 46-1 at PageID #: 593, ¶ 20.

Defendant testified that this regulatory rationale struck a chord with him because he was in the process of looking for a new job and knew "that the OCC [Office of the Comptroller of the Currency] would be involved in [his] future employment. . . ."  ECF No. 45-1 at PageID #: 406. The OCC would need to know that Defendant's employment with FPB had ended, and the PCA established that.  ECF No. 45-13 at PageID #: 538.  Defendant also "did not want to do anything that would take [him] out of consideration for approval for future employment. . . ."  ECF No. 45-1 at PageID #: 406.

Plaintiff argues that Defendant did not rely on the comments allegedly made to him moments before he signed the PCA – they were not the motivating factor in him signing the PCA.  After all, Defendant testified that he had "committed to the bank to sign the documents" as of November 1, 2013 – a week before the meeting with Attorney Wolfe.  ECF No. 45-1 at PageID #: 398.  The day before the meeting, Defendant requested that the bank have "two hard copies of the documents ready to sign" when he arrived at the offices on November 8.  November 1-8 Email Chain (ECF No. 45-12) at PageID #: 532; ECF No. 45-1 at PageID #: 403.  According to Plaintiff, Defendant had already made up his mind to sign the PCA; he did not need to be persuaded by Attorney Wolfe.

It stands to reason that the Court's determination of whether there is fraudulent inducement depends, in significant part, on its assessment of the parties' testimony.  As the assessment of the parties' testimony necessarily involves an assessment of their credibility – an

14

(4:15CV1850)

issue of fact – summary judgment is inappropriate.  *Alman v. Reed*, 703 F.3d 887, 895 (6th Cir. 2013); *see Liberty Lobby, Inc.*, 477 U.S. at 255 (stating that on a motion for summary judgment "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge").  "Instead, the evidence must be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party."  *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 570 (6th Cir. 2012) (citing *Matsushita*, 475 U.S. at 587); *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009)).

### E.  Count Two of the Counterclaim (ECF No. 13) for Breach of Ohio Rev. Code § 2307.60(A)(1)

Finally, Plaintiff argues that as a matter of law Ohio Rev. Code § 2307.60(A)(1) does not authorize a civil action for the crime he has alleged, *i.e.*, "securing writings by deception" under Ohio Rev. Code § 2913.43.  ECF No. 45 at PageID #: 301.  In *Cuyahoga Hts. Local School Dist. v. Palazzo*, No. 103592, 2016 WL 4037309 (Ohio App. 8th Dist. July 28, 2016), however, an Ohio Court of Appeals recently held that Ohio Rev. Code § 2307.60(A)(1) clearly authorizes a civil action for damages for anyone injured by a criminal act, regardless of whether any person has pleaded guilty to or been convicted of a criminal offense.  *Id.* at *3, ¶¶ 13 and 15 (collecting cases).  In *Jacobson v. Kaforey*, 39 N.E.3d 799 (2015), appeal not allowed, 143 Ohio St.3d 1502 (2015), the Ohio Court of Appeals for the Ninth District held:

> that the current version of R.C. 2307.60 independently authorizes a civil action for damages from violations of criminal acts.  That is exactly what the plain language of the statute authorizes.  *See* R.C. 2307.60(A)(1) ("Anyone injured in person or property by a criminal act *has*, and may recover full damages in, a civil action *unless specifically excepted by law* * * *.")....

(4:15CV1850)

*Id.* at 805, ¶ 21. (emphasis in original).  There is no law which specifically excepts § 2913.43 from the purview of § 2307.60.

Plaintiff brings to the Court's attention two other decisions:  *Cobra Pipeline Co., Ltd. v. Gas Natural, Inc.*, 132 F. Supp.3d 945, 953 (N.D. Ohio 2015) (Gwin, J.) ("Sections 2307.60 and 2307.61 . . . do not create a separate civil cause of action for every corresponding criminal statute."); *Sollenberger v. Sollenberger*, 173 F. Supp.3d 608, 636 (S.D. Ohio 2016) (citing *Cobra Pipeline* and finding that "a separate civil action must be available before invocation of Section 2307.60.").  Those decisions, while worthy of due consideration, are also not controlling and, at most, show that two federal district judges sitting in Ohio reached a decision different from that reached by the Ohio appellate courts in *Palazzo* and *Jacobson*.

## IV.  Conclusion

Viewing Defendant's probative evidence and all reasonable inferences drawn therefrom in the light most favorable to Defendant,

Plaintiff's Motion for Summary Judgment (ECF No. 45) is granted in part and denied in part.  Plaintiff's Motion for Summary Judgment (ECF No. 45) with respect to the substantive affirmative defenses of duress and estoppel is granted.  Counts I and II of the Complaint (ECF No. 1) and Counts One and Two of the Counterclaim (ECF No. 13)[9] remain pending for trial before the Court and a jury.

---

[9]  Defendant has elected to pursue damages on his fraud claim, and, therefore, is not seeking to rescind the PCA as pled in Count Three of the Counterclaim (ECF No. 13). *See* Defendant's Proposed Findings of Fact and Conclusions of Law as to Non-jury Claims (ECF No. 80) at PageID #: 1730.

16

(4:15CV1850)

     IT IS SO ORDERED.


  December 9, 2016                              */s/ Benita Y. Pearson*

Date                                         Benita Y. Pearson

                                             United States District Judge